**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEVE ZACCONE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 10 CV 00033** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| **STANDARD LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Steve Zaccone, seeks to recover disability benefits under Tempel Steel's Long Term Disability Insurance plan (the "Plan") pursuant to the Employee Retirement Income Security Act ("ERISA") §502(a)(1)(B). 29 U.S.C. §1132(a)(1)(b). The Plan was established in 2002 and contains an "Allocation of Authority" provision that, except for those functions that the Group Policy specifically reserves to the Policy owner or Employer, grants to Standard Insurance Company the "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy." That authority included, but was not limited to, the right to resolve all matters when a review has been requested, the right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it, and the right to determine eligibility for insurance, entitlement to benefits, and the amount of benefits payable. The Allocation of Authority clause concluded: "Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding." (Def.'s Resp., Ex. A, at 20-21).

Effective January 2007, the defendant issued a new group policy to Tempel Steel that does *not* contain an Allocation of Authority provision. *See* (Def.'s Resp., Ex. B). Both plans provide that the version of the plan in effect on the date of disability governs the participant's disability claim. Since the plaintiff became disabled on September 1, 2006, the defendant argues his disability claim is therefore governed by the 2002 Plan, which grants discretionary authority to Standard.

The plaintiff contends that pursuant to Section 2001.3 of Title 50 of the Illinois Administrative Code, the 2002 Plan's Allocation of Authority clause cannot be enforced. That Section prohibits the inclusion in any policy of insurance issued in Illinois by a health carrier that purports to reserve discretion to the carrier to interpret the terms of the contract or to provide standards of interpretation or review. Consequently, the defendant argues, the defendant's benefits determinations in this case require an "[i]ndependent decision—often though misleadingly called 'de novo review' [which]...is required in ERISA litigation when the plan does not provide differently." *Aschermann v. Aetna Life Insurance. Co.,* 689 F.3d 726, 728 (7th Cir. 2012).

The defendant seeks to avoid the bite of Section 2001.3 by arguing that it is preempted by 29 U.S.C. § 1144(a) and does not fall within ERISA's savings clause. Alternatively, it contends that Section 2001.3 does not apply retroactively to the 2002 Plan. And finally, it argues that the "plain" language of Section 2001.3 is narrow and intentionally limited to interpretations of the plan's terms, not to a determination of benefits. If the defendant is right, review is pursuant to the deferential, arbitrary and capricious standard.

# I.
# STANDARD OF REVIEW AND PREEMPTION

## A.

ERISA does not provide a standard of review for courts to apply when deciding a benefits dispute under §1132(a)(1)(B). *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 357 (2002)(finding an Illinois statute not preempted by ERISA). "It simply requires plans to afford a beneficiary some mechanism for internal review of a benefit denial and provides a right to a subsequent judicial forum for a claim to recover benefits." *Id.* The Supreme Court in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), recognizing that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretations of terms in the plan at issue," held that "a denial of benefits... is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If a plan grants such discretion, a deferential standard of review is appropriate. *Id.* at 111; *Metro. Life Insurance Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Conkright v. Frommert*, _U.S._, 130 S.Ct. 1640, 1646 (2010).

Under deferential review, "the plan's decision must be sustained unless Arbitrary and capricious, with the court's review "limited to the administrative record." *Krolnik v. Prudential Insurance Co. of Am.,* 570 F.3d 841, 843 (7th Cir. 2009). The plaintiff essentially concedes that the Allocation of Authority provision here grants broad discretionary authority to the Plan Administrator. Consequently, under *Firestone,* the correct standard of review would appear to be arbitrary and capricious. However, prior to the accrual of the plaintiff's claim for termination of benefits, the Illinois Department of Insurance promulgated a rule prohibiting discretionary clauses

3

in health insurance policies in the State of Illinois.[1]  Section 2001.3 of the Illinois Administrative

Code provides:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

50 Ill. Adm. Code §2001.3 (2010); 29 Ill. Reg. 10172, effective July 1, 2005.

The *raison d'etre* for Section 2001.3 is to protect consumers from having their benefits

determinations reviewed under an arbitrary and capricious standard and to:

> prohibit all such policies from containing language reserving sole discretion to interpret policy provisions with the insurer. The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting such clauses, the amendments aid the consumer by ensuring that benefit determinations are made under the reasonableness standard.

29 Ill. Reg. 10172 (July 15, 2005).  *See  Borich v. Life Insurance Co. of North America*, 2013 WL

1788478, *3 (N.D.Ill. 2013); *Zuckerman v. United of Omaha Life Insurance Co.*, 2012 WL 3903780,

3 (N.D.Ill. 2012).

Thus, consistent with the comprehensive language of Section 2001.3 and the implementing

regulations, courts in this District have uniformly recognized that the purpose of Section 2001.3 is

to ensure that *de novo* review would be the standard in ERISA cases when a denial of benefits is

challenged. *See Borich, supra*; *Garvey v. Piper Rudnick LLP Long Term Disability Insurance Plan*,

---

[1] Section 2001.3's effective date is July 1, 2005.  Standard terminated the plaintiff's disability benefits on March 19, 2008, effective February 27, 2008.

2011 WL 1103834, at * 2 (N.D.Ill. March 25, 2011) (citing 29 Ill. Reg. 10172; *Curtis v. Hartford Life and Acc. Insurance. Co.*, 2012 WL 138608, 2 (N.D.Ill. 2012); *Ball v. Standard Insurance. Co.*, 2011 WL 2708366, 1 (N.D.Ill. 2011).

**B.**

To escape the grip of Section 2001.3, the defendant contends that ERISA's preemption provision controls. That provision provides that ERISA supersedes all State laws relating to employee benefit plans. 29 U.S.C. § 1144(a). However, ERISA's broad savings clause provides:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1114(b)(2)(A).

Thus, a State law regulating insurance is saved from ERISA's preemption provision thereby preserving State regulation of the substantive terms of insurance policies, even those policies that fall within ERISA's purview. *See, e.g., Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 356 (2002); *Metro. Life Insurance. Co. v. Massachusetts*, 471 U.S. 724, (1985); *UNUM Life Insurance. Co. of Am. v. Ward*, 526 U.S. 358, 363 (1999). The inquiry here becomes whether Section 2001.3 is a law that "regulates insurance." To fall within ERISA's savings clause, Section 2001.3 must be 1) "specifically directed toward entities engaged in insurance" and 2) "substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n. of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-342 (2003).

While the Seventh Circuit has yet to address this issue, other Circuits have held that regulations comparable to Section 2001.3 were *not* preempted by ERISA. *See Am. Council of Life*

*Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009)(addressing Michigan's regulation banning discretionary clauses in disability insurance policies); *Standard Insurance. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009), *cert. denied sub nom*, *Standard Insurance. Co. v. Lindeen*, _U.S._, 130 S. Ct. 3275 (2010)(addressing the Montana insurance commissioner's practice of refusing to approve disability policies containing discretionary clauses). Both *Ross* and *Morrison* upheld state prohibitions on discretionary clauses that were specifically directed towards entities engaged in insurance and substantially affected the risk pooling arrangement between the insurer and the insured and were therefore not preempted.

Courts in this District have consistently held that Section 2001.3 falls within ERISA's savings clause, is *not* preempted, and requires *de novo* review. *See Borich*, 2013 WL 1788478 at *4; *Ehas v. Life Insurance. Co. of North America,* 2012 WL 5989215, 5 (N.D.Ill.2012)(collecting cases); *Barrett v. Life Insurance. Co. of N. Am.,*, 2012 WL 2319152 (N.D. Ill. 2012); *Zuckerman v. United of Omaha*, Case No. 09 C 4819 (N.D.Ill. Sept. 6, 2012); *Curtis v. Hartford Life & Acc. Insurance. Co.*, 2012 WL 138608, at *10 (N.D. Ill. 2012); *Ball v. Standard Insurance. Co.*, 2011 WL 759952, at *4-7 (N.D. Ill. 2011); *Haines v. Reliance Standard Life Insurance. Co.*, Case No. 09 C 7648 (N.D.Ill. Sept.9, 2009), [Dkt.# 34], at 2-3. *Compare Difatta v. Baxter Intern., Inc.*, 2013 WL 157952 (N.D.Ill. 2013)(declining to decide the preemption issue because the point had been waived).

Illinois is not alone in banning discretionary clauses. *Morrison* noted that discretionary clauses are "controversial"; "the National Association of Insurance Commissioners ("NAIC") opposes their use and has concluded that a ban on such clauses would mitigate the conflict of interest present when the claims adjudicator also pays the benefit. *Morrison*, 584 F.3d at 840. As of January

17, 2012, nineteenhave restricted the use of discretionary clauses. http://www.leg.state.vt.us/reports/2012ExternalReports/ 275027.pdf.

The defendant has not cited a single case holding that a State's prohibition of discretionary clauses is preempted by ERISA. Rather, it argues that Section 2001.3 poses an obstacle to Congress' objectives in enacting ERISA. This is simply another way of saying that all the decisions in this district were wrongly decided. In support of its policy argument, the defendant points to the Supreme Court's decision in *Conkright*, decided after *Ross* and *Morrison.* In *Conkright,* the plan gave the administrator discretion, and so an interpretation by the administrators should have been reviewed with deference. 130 S. Ct. at 1646. However, the Court of Appeals had crafted its own exception to *Firestone*, holding that a court need not use a deferential standard when a plan's administrator's previous construction of the same plan terms was found to violate ERISA. The Supreme Court rejected this "one-strike-and-you're-out" approach, holding that "it has no basis in…*Firestone*, which set out a broad standard of deference without any suggestion that the standard was susceptible to *ad hoc* exceptions." *Id.*

Noting the tension between "ensuring a fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans," the Court explained that Congress attempted to create a system that was not so complex "that administrative costs, or litigation expenses, unduly discourage employers from offering plans in the first place." *Id*. at 1649. Instead, the goal of ERISA was to induce "employers to offer benefits by assuring a predictable set of liabilities." *Id.* To that end, deference protects these interests and promotes efficiency, predictability, and serves the interest of uniformity. *Id. See also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 818 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 2924 (2011). "That's why courts should try to interpret ERISA

7

in a consistent and predictable manner, so that all parties to ERISA plans know what to expect." *Sullivan v. CUNA Mut. Insurance. Soc'y*, 649 F.3d 553, 564 (7th Cir. 2011), *cert. denied*, _U.S._, 132 S. Ct. 2379 (2012). But, contrary to the defendant's tacit argument, that does not mean the Court was signaling a retreat from *Firestone*.

After *Conkright*, the Seventh Circuit has continued to uphold *Firestone's* framework for judicial review – *de novo* review being the default, absent a plan's investing the administrator with discretion. *See Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 836-37 (7th Cir. 2012); *Jackman Fin. Corp. v. Humana Insurance. Co.*, 641 F.3d 860, 864 (7th Cir. 2011); *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011); *Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th Cir. 2011)("In *Firestone's* framework, deferential review is *exceptional*, authorized only when the contracts that establish the pension or welfare plan confer interpretive discretion in no uncertain terms")(emphasis added). Since *de novo* remains the default standard of review, it is difficult to imagine how a state law requiring that level of review would conflict with the statute. *Ross*, 558 F.3d at 608.

Moreover, *Conkright* did not address preemption under ERISA, let alone the authority of a state to regulate insurance. It does not therefore control the outcome of this case. *Ball v. Standard Insurance. Co.*, 2011 WL 759952, at *6 (N.D. Ill. 2011). The principle that "a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action" has a long and unbroken lineage. *United States v. More,* 3 Cranch 159, 7 U.S. 159 (1805)(Marshall, C.J.); *Cromwell v. County of SAC*, 94 U.S. 351, 356 (1878). *See also, Lopez v. Monterey County,* 525 U.S. 266, 281 (1999); *Petrov v.*

8

*Gonzales*, 464 F.3d 800, 802 (7th Cir. 2006)("Because *Tunis* did not mention the subject, it does not contain a holding on the issue.").[2]

In short, *Conkright* does not alter the analyses in *Ross* and *Morrison* or require the conclusion that Section 2001.3 is outside ERISA's savings clause and has been preempted by ERISA.

## II.
## The Effect of Renewing the Plan and the
## "Plain Meaning" of Section 2001.3

### A.

Section 2001.3 does not apply retroactively to ERISA plans established before the regulation's effective date. *See Barrett v. Life Insurance. Co. of N. Am.*, Case No. 11 CV 6000, (N.D. Ill. 2012), [Dkt.#49], at 3; *Golden v. Guardian Life Insurance. Co. of Am.*, 2010 WL 3951508, at *1 (N.D.Ill. 2010); *Haines v. Reliance Standard Life Insurance. Co.*, 2010 WL 2607257, at *1 (N.D.Ill. June 23, 2010); *Golden v. Guardian Life Insurance. Co. of Am.*, 2010 WL 2293390, at *7 (N.D.Ill. 2010); *Marszalek v. Marszalek & Marszalek Plan*, 485 F.Supp.2d 935, 938 (N.D.Ill.2007). It does, however, "appl[y] only to plans issued or *renewed* after July 1, 2005, the provision's

---

[2]   The obvious reason for the limitation is that judges are neither omniscient nor clairvoyant and often the point under consideration in a subsequent case did not occur to the court or counsel in the earlier one. *See Republic of Austria v. Altmann*, 541 U.S. 677, 733 (2004); *Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993).

 Even where a series of opinions assume a particular position on an issue but the briefs and opinions did not raise or discuss the issue, the opinions are not decisive when the question is squarely raised. *United States v. Acox*, 595 F.3d 729 (7th Cir. 2010). *Sub-silentio* resolution is never sufficient. *Republic of Austria v. Altmann*, 541 U.S. 677, 733 (2004).

effective date." *Garvey v. Piper Rudnick LLP Long Term Disability Insurance. Plan*, 2011 WL 1103834, *2 (N.D. Ill. 2011) (emphasis added); *Haines v. Reliance Standard Life Insurance. Co.*, No. 09 C 7648, (N.D.Ill. 2010), [Dkt.#34]; *Bake v. Life Insurance. Co. of N. Am.*, Case No. 07 CV 6600, (N.D. Ill. 2008), [Dkt.#21]. "So the relevant question is whether the Plan was or was not 'renewed' or 'issued' after that date." *Barrett, supra.*

The plaintiff contends that the Plan was renewed effective September 1, 2005. In support of his contention, he has attached a letter from the defendant dated August 11, 2005, which states "[w]e are pleased to renew your policy with continued coverage and services." (Pl.'s Mem., Ex. A, at 1). The letter continues that after a review of various factors, "effective September 1, 2005, we are adjusting your premium rates as indicated in the chart below." *Id.* Also attached is an earlier letter from the defendant dated April 4, 2005, indicating the then upcoming renewal and the accompanying standardized form entitled "Group Renewal Form" referencing the policy at issue, which required Tempel Steel to provide employee data. *Id.* at 2-3.

Furthermore, well settled Illinois law, which the Bulletin relies on, has addressed the legal effect of renewing an insurance policy. "In Illinois, the renewal of an insurance policy is generally conceived to be a new contract, particularly where…material and significant differences exist, such as effective dates, increased premiums, and the fact that the policy is conditioned upon new representations by the insured." *Am. Auto Guardian, Inc. v. Acuity Mut. Insurance. Co.*, 548 F. Supp. 2d 624, 628 (N.D. Ill. 2008). "When an insurance policy is issued or renewed, applicable statute provisions in effect at the time are treated as part of the policy." *Eipert v. State Farm Mut. Auto. Insurance. Co.*, 189 Ill. App. 3d 630, 637, 545 N.E.2d 497, 501 (1st Dist. 1989). "Each time a policy is renewed it results in a new contract for purposes of incorporating statutory provisions into the

policy." *Id.* "Correspondingly, whatever version of the applicable statutory provisions is in force when the policy is issued or renewed determines any questions arising under that policy and is normally controlling throughout the policy's term." *Boyd v. Madison Mut. Insurance. Co.*, 146 Ill. App. 3d 420, 425, 496 N.E.2d 555, 558-59 (5th Dist. 1986), *aff'd,* 116 Ill. 2d 305, 507 N.E.2d 855 (1987).

There is no question that the Plan was renewed or that it was renewed after the adoption of Section 2001.3.[3] Consequently, upon the plan's renewal, in essence a new policy was issued, which, in this case, involved a change in premiums and the effective date, both of which are "material and significant differences." *See Am. Auto Guardian*, 548 F. Supp. 2d at 628. Pursuant to 215 Illinois Compiled Statute 5/357.23,[4] Section 2001.3's ban on discretionary clauses was incorporated by operation of law into the Plan. *See Bake*, *supra.* (a policy's renewal after Section 2001.3 took effect resulted in a new contract to which Section 2001.3 applied).

However, in order for Section 2001.3's prohibition to apply, the plaintiff's termination of benefits must also have occurred after its effective date. Similarly, the termination of benefits must have occurred after the Plan's renewal because an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003); *Borich*, 2013 WL 1788478 at *2. Here, the plaintiff became disabled on September 1, 2006, and the defendant terminated his disability benefits

---

[3] As compared to *Barrett*, *supra*, in which the plan was not renewed, but merely amended, or *Garvey*, *supra*, in which the plaintiff failed to provide any evidence the plan had been renewed.

[4] "CONFORMITY WITH STATE STATUTES: Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes." 215 ILCS § 5/357.23

on March 19, 2008, effective February 27, 2008, subsequent to Section 2001.3's adoption *and* the Plan's renewal.  Thus, Section 2001.3's prohibition applies.

## B.

Finally, the defendant argues that under the "plain meaning" doctrine, Section 2001.3 of the Illinois Administrative Code only prohibits a clause that accords discretion to a plan administrator to interpret the "terms of the policy."  (Def.'s Resp., at 6-7).  Among other things, this cramped reading of the Section ignores its title, the Illinois Department of Insurance interpretation of Section 2001.3, the well-established case law that defines when a policy is renewed, and most importantly, the text of the Section.

Section 2001.3 is broadly entitled, "Discretionary Clauses Prohibited."  The breadth of the title reflects an intent to prohibit *any* discretionary clause in an Illinois insurance policy or plan.  Ill. Admin. Code tit. 50, § 2001.3.  While express provisions in the body of an act cannot be controlled or restrained by the title, it is relevant to the court's construction of the statute. *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 619 (7th Cir.2012). *See also United States v. Fisher,* 2 Cranch, 358, 386 (1805)(Marshall, C.J.); *Coosaw Mining Co. v. State of South Carolina,* 144 U.S. 550, 563 (1892); *United States. v. Thompson,* 484 F.3d 877, 881 (7th Cir.2007) (Easterbrook, C.J.)(caption of a statute can properly be used "for guidance."); *S.E.C. v. Benger,* 2013 WL 1277872, 2 -3 (N.D.Ill. 2013).

The Section was intended to strip policies of insurance in Illinois of all discretionary clauses, thereby triggering a *de novo* standard of review when a denial of benefits was challenged in court. *Ehas*,  2012 WL 5989215, 5; *Zuckerman*, 2012 WL 3903780, 5; *see Aschermann v. Aetna Life Insurance. Co.*, 689 F.3d 726, 728 (7th Cir. 2012)(*de novo* review applies unless plan confers

discretion to interpret and implement its terms); *Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan*, 687 F.3d 320, 327 (7ᵗʰ Cir. 2012)("A district court conducts a de novo review of a denial of benefits under an ERISA plan unless the plan documents grant the claim fiduciary discretionary authority to construe the policy terms to decide eligibility for benefits.").

Illinois Department of Insurance Bulletin 2010-5 entitled, "Prohibition on Discretionary Clauses," emphasizes the "absolute prohibition on discretionary clauses contained in 50 Ill. Admin. Code 2001.3." *See* 2010 WL 2609380.[5] Of course, as the Agency responsible for insurance regulations in the State, the Illinois Department of Insurance understands the insurance industry and how claims for benefits are determined. If the Agency and its Director fail to make a formal distinction between the discretion to determine benefits eligibility and other related discretionary decisions, there is no basis on which a court can permissibly engraft onto Section 2001.3 a limitation the State of Illinois has chosen not to impose. *Cf. Honig v. Doe,* 484 U.S. 305, 325 (1988); *Harris v. Garner,* 216 F.3d 970, 976 (7th Cir.2000). That no such limitation was imposed no doubt stems from the recognition that in the end and in the real world, there can be no readily discernible, functional difference between benefits evaluations and interpretations of policy terms. *Cf. Lee v. Illinois,* 476 U.S. 530, 547 (1986)(Blackmun, J., dissenting)("There is a real world as well as a theoretical one.").

---

[5] Administrative rules and regulations have the force and effect of law, and must be construed under the same standards which govern the construction of statutes. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 379 (2008). In construing statutory enactments, the General Assembly is presumed to know existing law including the body of law existing in administrative regulations. *Jacobson v. Gen. Fin. Corp.*, 227 Ill. App. 3d 1089 (1992). Consequently, it follows that Agency bodies drafting administrative rules should be afforded the same presumption.

Perhaps that is why Courts have not differentiated between denials stemming from contract interpretation and denials stemming from evaluations of medical evidence.  A denial of benefits is a denial of benefits, and a benefits decision necessarily involves an application of the plan's terms to the medical evidence and a review of that evidence in light of the plan's terms.  Section 2001.3, itself, acknowledges this.  After all, it prohibits, not just clauses purporting to reserve discretion to the health carrier to interpret the "terms of the contract," but also clauses "purporting . . . to provide standards of review or interpretation that are inconsistent with the laws of [Illinois]."  50 Ill.Admin. Code §2001.3.  A grant of discretion to make all benefits decisions other than those involving the interpretation of the terms of the policy would be plainly inconsistent and incompatible with the prohibition against grants of discretion to interpret the terms of the contract.  The two are opposite sides of the same coin and simply cannot in the real world be easily or readily separated from each other in many cases.  Indeed, to attempt to do so would lead to the very inefficiency and unpredictability that ERISA seeks to prevent.  *See supra* at 7.

The Illinois Department of Insurance Bulletin entitled "Prohibition on Discretionary Causes," issued on June 28, 2010, specifically addresses the interpretation of Section 2001.3 and provides in relevant part:

> It has come to the attention of the Department that, with respect to insurance policies originally issued before the July 1, 2005 effective date of the regulation, certain insurers continue to exercise discretionary clauses against their policyholders. Typically this is done under the theory that the regulation has no retroactive application. Such conduct does not comply with the law in that it does not properly take into account the renewal of the policy.

*   *   *

Illinois case law requires that statutory provisions in effect at the time of issuance or renewal are incorporated into the policy: *When an insurance policy is issued or renewed, applicable statutory provisions in effect at the time are treated as part of the policy.*

\* \* \*

The regulation prohibiting discretionary clauses is accordingly applicable to all currently issued and outstanding accident, health, and disability insurance policies in that all such policies will have either been issued or renewed since the effective date of the regulation.

2010 WL 2609380 (Emphasis supplied).

The Bulletin plainly does not purport to apply Section 2001.3 retroactively to all policies in effect at the time of the bulletin. That would be impermissible. Rather, it merely states that the regulation applies to all policies renewed after July 1, 2005, because under Illinois State law a renewal of a policy effectively results in the issuance of a new policy which is subject to all applicable regulations in existence at that time. *See Barrett v. Life Insurance. Co. of N. Am.*, Case No. 11 CV 6000, [Dkt.# 49] , at 3.

While a state agency's interpretation of its own regulation is a question of law, which receives *de novo* review, *Garvey,* 2011 WL 1103834 , at \*3, a reviewing court affords substantial deference to an agency's interpretation of a statute that the agency administers because of the experience and expertise the agency has gained through time by enforcing the statute. *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st Dist. 2012). The defendant's contention that "[a]n Illinois agency's legal interpretation of its rules under Illinois law warrants *no deference* whatsoever" is mistaken. (Def.'s. Resp., at 7).

15

## C.

A final word about the defendant's contention that under the "plain language" doctrine, Section 2001.3 only prohibits insurers from reserving discretionary authority "to interpret the terms of the contract." This narrow construction of the text leads to the conclusion that Section 2001.3 therefore permits a clause in an ERISA plan that invests the Plan Administrator with discretion to make benefits determinations involving medical judgments, vocational determinations, or any other decision that does not involve the pristine interpretation of contract terms.

The defendant is correct that "[w]ords used in statutes must be given their ordinary and plain meaning." *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000); *Murray v. Chicago Youth Ctr.*, 224 Ill. 2d 213, 235 (2007). However, "[t]o determine the statute's plain meaning, a reviewing court must read all the provisions together and consider the legislature's purpose in enacting the statute. [People v.]*Perry,* 224 Ill.2d [312]at 323 [2007]." *Village of Elmwood Park v. Radomski,* 2012 WL 6962067, 2 -3 (1st Dist. 2012). If according the plain meaning to the statutory text would lead to absurd results, or contravene the overall purpose of the statutory scheme, the words will not be given their seemingly plain meaning. *Jefferson v. United States*, 546 F.3d 477, 483-484 (7th Cir. 2008). *See also Matter of Chicago, M., St. P. & Pac. R. Co.*, 658 F.2d 1149, 1159 (7th Cir. 1981)("It is perhaps the oldest canon of statutory construction that a statute be interpreted with the overriding purpose of Congress kept firmly in mind.").

The defendant's plain meaning argument focuses inordinately on the phrase "to interpret the terms of the contract," while ignoring the surrounding text – and, of course, the purpose that animates the Section – even though it is fundamental that in statutory construction cases, we begin with "the language [of the statute] itself [and] the specific context in which that language is used."

*Scherr v. Marriott Intern., Inc.,* 703 F.3d 1069, 1077 (7th Cir. 2013).  It is simply not enough to focus on "the bare meaning of a word," without regard to "its placement and purpose in the statutory scheme."  *Khan v. United States*, 548 F.3d 549, 554 (7th Cir. 2008).  "'We do not ... construe statutory phrases in isolation; we read statutes as a whole."  *Samantar v. Yousuf,* _U.S._, 130 S.Ct. 2278, 2289 (2010).

What the Section prohibits is not merely a provision purporting to reserve discretion to the hearth carrier to interpret the terms of the contract but also any provision that purports to reserve discretion to the carrier "to provide standards of interpretation or review that are inconsistent with the laws of this State."  If Section 2001.3 was only intended to prohibit a clause investing an administrator with discretion to interpret contract terms, it would not have contained the additional clause quoted above.  Further, Section 2001.3 makes clear that the laws of this state will not countenance a clause reserving discretion to an administrator to interpret policy terms.  Plainly, a clause that invests discretion in an administrator to create standards of interpretation and review would be inconsistent with the preceding prohibition, since, as we have shown, benefits decisions and interpretation of contract terms are inextricably linked – at least in most cases.

The defendant's argument that its Plan contains a far broader reservation of discretionary authority than the right to interpret the terms of the contract, while accurate, does not advance its case one wit.  It does precisely the opposite.  Indeed, the scope of the discretionary authority in the hands of the administrator leaves one almost breathless.  The Plan's Allocation of Authority retains, *inter alia*, the right to "resolve all matters when a review has been requested," "establish and enforce rules and procedures," and determine "eligibility for insurance" and "entitlement to benefits." (*Def.'s Resp.*, Ex. A, at 27-28).  But the defendant fails to explain how these uses of discretion are

separate and distinct from interpretation of the terms of the contract, and as we have seen, they cannot be.

How exactly would a plan administrator resolve a  review or determine entitlement to benefits without interpreting the Plan's terms?  The Plan here provides multiple definitions relating to the ability to work such as the definitions of "occupation," "material duties," (*Def.'s Resp.*, Ex. A, at 15), "disability," (*Id.,* at 14-15), "active work," (*Id.,* at 12), and "temporary recovery." (*Id.,* at 17).  It also addresses various medical concerns, such as a long list of disabilities excluded from coverage, (*Id.,* at 23) and disabilities subject to limited pay periods, (*Id.,* at 24).  It defines several medical terms such as "preexisting condition," (*Id.,* at 23), "mental disorder," "substance abuse," "hospital," (*Id.,* at 24), "injury," "physical disease," "physician," and "pregnancy." (*Id.,* at 30).

All this shows is the practical impossibility in almost every case of a plan administrator making discretionary decisions – such as a medical judgment or vocational determination – that did not involve a construction of some provision in the policy.  Benefits determinations are not, to borrow Justice Holmes' phrase, "a brooding omnipresence in the sky."  They necessarily involve an application of one or more clauses of the policy to a given set of facts.  *See e.g.*, *Davis v. Unum Life Insurance. Co. of Am.*, 444 F.3d 569, 572 (7th Cir. 2006).[6]

 That is exactly what occurred here. The plaintiff was informed by letter that "the information in his claim file continues to confirm that you have been "disabled by chronic back and neck pain, cervical and lumbar degenerative arthritis, and disc bulges without neurocompressive

---

[6] *Davis'* cause of action and the district court's initial decision occurred *prior* to the enactment of Section 2001.3.  *See Davis v. Unum Life Insurance. Co. of Am.*, WL 743082 (N.D. Ill. 2005). At no point in *Davis* does the Seventh Circuit address the effect of Section 2001.3's prohibition on discretionary clauses.

features. Because chronic back and neck pain, cervical and lumbar degenerative arthritis, and disc

bulges without neurocompressive features are Other Limited Conditions *as defined by the terms* of

the Tempel Steel Company Group Policy, The Standard has applied the Other Limited Conditions

Limitation to your claim" [Dkt. #22], ("*Group Insurance Policy and Administrative Record,"* Ex.

B, at 25) (emphasis added).

The inextricable relationship between interpretation of a plan's terms and a disability

determination was recognized by the Supreme Court in *Firestone*:

> [T]he validity of a claim to benefits under an ERISA plan is likely to turn on the
> interpretation of terms in the plan at issue…. [W]e hold that a denial of benefits
> challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless
> the benefit plan gives the administrator or fiduciary discretionary authority to
> determine eligibility for benefits *or* to construe the terms of the plan.

489 U.S. at 115 (emphasis added). *Firestone* makes clear that a reservation of discretionary

authority either to determine eligibility for benefits *or* to construe the terms of the plan precludes

*de novo* review. *Cf., Conkright*, 130 S.Ct. at 1646 (Administrator had "'broad discretion in making

decisions relative to the plan,'" *i.e.,* to "construe" the plan"); *Marantz*, 687 F.3d 320, 327 ("A

district court conducts a de novo review of a denial of benefits under an ERISA plan unless the plan

documents grant the claim fiduciary discretionary authority to construe the policy terms to decide

eligibility for benefits."). To attempt to draw a bright-line distinction between a clause that gives

an administrator discretion to interpret policy terms and a clause that gives the administrator

discretion to make all other benefits related determinations ignores the reality of the claims process

and the purpose of Section 2001.3. It must not be forgotten that discretionary authority to construe

policy terms is not an end in itself, it exists to enable administrators to decide eligibility for benefits.

The defendant also argues that there is existing precedent for limiting a States' prohibition on discretionary clauses to those involving the  interpretation of a policy's terms; the defendant argues the Sixth Circuit did just that in *Ross*.  Besides not being binding precedent, we are dealing with the intended scope of an Illinois statute, not a Michigan statute.  The issue presented in *Ross* was simply whether Michigan's version of Section 2001.3 was preempted by ERISA.  558 F.3d at 602.  The court said that "[a]ll that today's case does is allow a State to remove a potential conflict of interest. And while Michigan's law may well establish that the courts will give de novo review to lawsuits dealing with the meaning of an ERISA plan, it does not follow that they will do so in reviewing the application of a settled term in the plan to a given benefit request." *Ross,* 558 F.3d at 609.[7] In any event, the question is not whether Illinois may chose to limit itself in a particular way, but whether it intended Section 2001.3 to be limited.  It is plain that did not. And that resolves the defendant's argument.

**CONCLUSION**

The Supreme Court in *Firestone Tire and Rubber* did not distinguish between clauses that give the administrator or fiduciary discretionary authority to determine eligibility for benefits and those that give them discretionary authority to construe the terms of the plan.  Either clause suffices

---

[7] The defendant also cites *Davis* for the proposition that a plan administrator's interpretation of medical files must always be reviewed under an arbitrary-and-capricious standard.  But *Davis* involved a discretionary clause which dictated that review be deferential.  444 F.3d at 575.  The suit was filed, and the lower court's decision issued, prior to the enactment of Section 2001.3.

to require deferential review. This conclusion is further fortified by *Conkright*, where the Court said that authority to "construe" the plan invests in the Plan Administrator "'broad discretion in making decisions relative to the plan.'" 130 S.Ct. at 1646. *A fortiori*, prohibiting either clause suffices to require *de novo* review. Illinois has determined that discretionary clauses are against public policy, and that judgment is one ERISA's savings clause allows it to make. Thus, the plaintiff's Motion Regarding the Proper Standard of Review Under ERISA and Illinois Department of Insurance Regulation §2001.3 [47] is granted and the appropriate standard of review in this case is *de novo*.

ENTERED:_____

UNITED STATES MAGISTRATE JUDGE

DATE: 5/1/13

21